And we'll hear argument in the final argued case on today's calendar, Johnson v. Central And I will say to the lawyers on each side that you should assume that we are very familiar with the facts of this case, and if something or anything frankly needs to be said that can't be said, it's our strong preference that you provide us with a letter after oral argument, otherwise we'll figure things out. Okay? Thank you. Thank you. Good morning, your honors. May it please the court. Daniel Novak for the plaintiff appellant, Adam Johnson. I don't think you'll have an issue with me putting information in front of you that you don't already know because much of the information is shielded from me. Nonetheless, we contend that that's irrelevant because the analysis here is not turning upon what information was shared, but rather how it was shared. This case turns on two words. Made public. In every other legal context, public is defined as anyone who lives outside the scope of privilege. If I share a client confidence to a fellow strap hanger on the C train, I've effectively shared it with the world in any other context. Yet the government argues that it is immune from this common sense delineation of public. It says instead that once it provides someone with no strings attached access to confidential information, they cease to become a member of the body politic. Public is everybody except that person. The CIA wants to make this case about national security. It's not. We're not debating whether or not in any other context the CIA would be perfectly entitled to protect the information at issue in this case. This is about waiver. When the government surrenders control of a tangible record without strings attached, it becomes public. Period. Now this court under Wilson asserted three prongs that would have to be met by any person seeking information. Information must be as specific as previously disclosed. It must match the information previously disclosed, and it was made public through an official and documented disclosure. The CIA concedes that the first two prongs of this analysis are met. Is the reporter's email a public record? Your Honor, the CIA produced without redaction the reporter's side of each correspondence. So yes, Your Honor. At least they're not contesting as much. They also concede that this was an official and documented disclosure. So again, we're left with this made public standard. The CIA has turned made public into something more than that. They've turned it into made, quote, truly public. That's frankly a phrase without meaning. If that were the standard, then the official acknowledgment doctrine would be a nullity. If FOIA requesters needed to or were simply able to Google the information or walk into the courthouse to receive it, there would be no. If the issue were as simple as you're stating it, then some of the precedents would be coming out the other way. Respectfully, Your Honor, there's a different factor that this case turns upon that none of the D.C. Circuit cases have here. Every case is unique, but let's hear it. Every other case, there was never a one-to-one match of the email. Now, in, for instance, the Students Against Genocide case, they showed, it was a show and tell, but no one kept the information. The same was true in the D.C. District Court case, Judicial Watch. The filmmakers were brought in and briefed on certain things, but, again, did not leave. The show and tell was the United Nations Security Council, which I believe has, like, representatives of 25 nations in it. Correct, Your Honor. I mean, I would consider that to be pretty public. Your Honor, well, first, as an initial matter, you're certainly not obligated to adopt the reasoning of the D.C. Circuit. In fact, I would urge you to look to a different circuit. We often do find influential the reasoning of the D.C. Circuit in matters like this because they have more of these cases than we do. Well, we're trying to catch up here as best we can. Oh, great. And to the extent that my amicus co-counsel here can speak to the D.C. Circuit's way of looking at things, he perhaps can offer why this case certainly fits within the D.C. Circuit tradition, and I certainly endorse that as well. There's a different factor here, factually, that makes this what Judge McMahon called, quote, the perfect storm. As I understand it, usually when you have a perfect storm, you win. So we're in an unusual footing here where we seem to have met every criteria that's been laid out by the D.C. Circuit. We also have the Ninth Circuit with the Watkins case that merely looks upon whether or not there were strings attached, and yet where Judge McMahon sort of veered off course at the very end and said, you know what, it's not truly public. The standards that she offered for truly public were that it was published in a newspaper, sit where any member of the public could walk into the offices of the Times and demand to see a copy, or be susceptible to service of a subpoena on the reporter recipients. I find that third factor to be the most confusing because we don't have a, first of all, only 49 states have a reporter's privilege law. Wyoming does not. And there's no federal law that protects reporters. It's a common law doctrine that's developed. So if that's the case, what we have essentially is a standard here that relies upon the physical location of the recipient of the information. Now, in this case, they're in New York and D.C. Perhaps they're protected, perhaps they're not. But we can't have a doctrine here that relies upon the location of the recipient or their downstream actions. FOIA is a doctrine that, excuse me, FOIA law must turn upon the government's ascertainable actions. If the government is going to put that in the hands of a downstream participant, in this case, various journalists, then essentially FOIA then turns upon their understanding of what they're allowed to do with it. So at this point, it's the CIA's position that any of these individuals could make it public,  So we can't have a subjective intent doctrine here. When I say subjective intent, what I mean to say is that the CIA gave them the information, didn't put strings attached on it, certainly nothing that's legally cognizable, and hoped that they would not put it forward. That's been enough in the D.C. Circuit cases where they merely showed them something, but here we have an actual physical permanent record email that's moving off the mothership. And so it's not practical to have a doctrine that relies upon anyone other than the government to decide whether the government is making a record public. In the context of a private email, what kind of strings attached would, according to your argument, bring communication over from one side to the other? Well, certainly, Your Honor, there's instances where certain disclosures are mandated by law. The D.C. Circuit has looked at instances where Brady material that had been turned over was not seen as surrendering an official acknowledgment. In the case of private email, it's difficult to imagine a circumstance. If this court sees it fit, they could look at whether or not there was a preexisting agreement between the parties, an NDA, for instance. Judge McMahon, in looking at the record, said that the record is silent on this. There's nothing in the record that suggests that there was any sort of strings attached, common sense or otherwise. So is your argument, then, that any private email correspondence would create a permanent public record? Certainly there could be carve-outs. Again, information could come under another protection. But in this instance, no. If it's between the government and an outside party, it's waived, essentially. The analysis needs to be done at the moment the material leaves the government's control, not what it's about, why the government might want to protect it. That would include a conversation over the phone? No, Your Honor. Under the D.C. Circuit's analysis, there's no case law that suggests that they can't pick up the phone. This is the safe harbors that Judge McMahon referenced. There's many, many safe harbors. You can pick up the phone. You can do a show and tell. The case of Muslim advocates, they actually let the groups come in and take copious notes over the course of two hours. That was found to not have waived the protection for the material because it was not a one-to-one match and because there's still retained plausible deniability. Those plainly are not factors here because it's the same exact record. We'll hear from your friend, the amicus. Thank you. The court's room. Thank you, Your Honors. I had asked the clerk that I be allowed to speak after the CIA, and so I'd like to ask you all the same thing because my main value is responding to the arguments that they make. We'll hear from you now. All right. Can I reserve some rebuttal time then, please? You can reserve a minute. All right. I'd like to reserve a minute for rebuttal time. This case comes down to one thing that the CIA said in its brief. Official disclosure is not synonymous with authorized disclosure. That is the distinction they're trying to draw, and there's no basis for it. That is a distinction that they're trying to make to distinguish this case from cases like Memphis Publishing where an inadvertent FOIA release was still deemed to be an official prior disclosure because inadvertent is not the same as unofficial. They're trying to say that, well, maybe inadvertent isn't the same as unofficial, but intentional for the right reasons is not the same as official, and that doesn't work. As Mr. Novak said, there are numerous exceptions to the general waiver rules, and the CIA blew past all of them. They did not make a show-and-tell. They did not do it on the phone. They did not impose a nondisclosure agreement. They did nothing. And to your previous question, the entire issue in the D.C. Circuit around the idea of the show-and-tell and the telephone is, as Mr. Novak said, plausible deniability. It's this idea that if you look at any of the cases that discuss this, they say that that is the groundwork for this argument that, well, if I tell a reporter something on the phone and he writes about it, Iran can choose to ignore it because the American government has not officially disclosed it, and that is why written government records matter and written e-mails from the CIA to a reporter are qualitatively different. Someone could make the argument that something on the phone is a prior disclosure, but to that today no one has made that argument and no one has endorsed it. We're not actually asking for that now. That is not the argument, yes. And it's important to look at the idea of public domain as the CIA defines it, because if you look back to the testimony that I provided in the amicus brief from another case where the CIA was talking about its policies to ensure that classified information is not either unwittingly or intentionally released into the public domain, they use that word, they mean outside the agency. They don't mean on the front page of the New York Times. The CIA sees the public domain as anything that is not the agency, except when they choose to do it themselves, at which point they say, well, we're going to defer to the actions of Scott Shane, and that simply can't be. Well, surely there's occasion when a disclosure is made in order to preserve a fact or a secret from being widely disseminated. Your Honor, may I continue? Yes. Look, a newspaper comes across something, some anonymous thing, that is revealed from inside the government and calls a security agency to find out whether they can publish it or whether it would hurt the United States to publish it. And if the agency says, yes, it would, well, the agency is admitting that the thing that's in the disclosure, possibly stolen information, exists and is true. Does that mean that it is now in the public domain? Because a responsible newspaper, if they're Americans, are not going to publish it. It does not always. I draw a distinction between your hypothesis and your hypothetical and what happened here. But my hypothetical basically at least erodes the general principle that you're articulating. With respect, it does not, if they do anything except send a written record. This is all that matters is that they are arguing in their brief that they have discretion. Everything is now on e-mails. I mean, you can't get anybody on the phone, certainly not in the government. With respect, that is not a question for FOIA. If CIA's problem here is that it wants to insert new provisions into the law, and they do this periodically, and it even prompted Chief Judge Howell to say in a similar case that it is not the job of CIA or this court, however, to amend statutory language. If they have a problem with your scenario, they need to petition Congress. If they cannot, ask you to write things into the law. Thank you. Mr. Sun. Good morning, Your Honors, and may it please the Court. Actually, good afternoon. I'm sorry. We're passing good afternoon. Assistant United States Attorney Anthony Sun on behalf of the dependent Pele Central Intelligence Agency. Your Honor, I think the panel has caught on to the very crux of this case. What does it mean to be public? In this case, as the record shows, the e-mails were limited, authorized disclosures, made in three private communications in order to protect intelligence sources and methods. On the public record, this is established at Joint Appendix 41 in the Unclassified China Declaration, paragraph 14. In this case, there is no dispute that the information was properly classified and specifically exempted from disclosure. And there can be no dispute that in this case, the disclosure was made to protect intelligence sources and methods. Now, the district court properly concluded that the CIA's limited disclosures here, made to protect intelligence sources and methods, does not mean that the information has entered the public domain. In particular, as I mentioned, the communications here were private communications. These particular e-mails are not in the public record. Contrary to plaintiff's contention, there is no permanent public record. You would concede that it's a very funny way to keep something secret by telling a reporter. Certainly, Your Honor, and the CIA, in making disclosures at issue in this case, recognized the risks and the upside. And in the CIA's sweeping power and broad discretion, concluded that it was worth the risk of sending, again, these e-mails to three journalists. It was worth the risk of possible further dissemination in order to protect specific intelligence sources and methods. And again, Your Honor, this Court's precedent, Wilson and Hudson River Sloop Clearwater, made clear that to be a matter of public record, it must be easily discoverable by a member of the public. And this is Wilson at 586 Ft. 3rd at 188, and quotes Hudson River Sloop Clearwater, 891 Ft. 2nd at 1422. Now, Your Honor, even on the public record in this case, Joint Appendix 33, which is one of the e-mails, these e-mails are private on their face. That particular e-mail, you may recall, there's a certain portion that is on the record. And the rest of it is redacted because, as is clear from the face of the e-mail, that information was intended to remain private. The plaintiff here cannot point to any specific information in the public domain or any permanent public record that duplicates the information being withheld here. If the reporters had put a copy of the e-mails online or otherwise disseminated those, then how would that affect or how should that affect our view of this case? Your Honor, it should not affect your view for two reasons. First, as this Court has established in numerous prior cases, a disclosure from a reporter to the outside world is still appreciably different, as a matter of law and fact, from a disclosure under FOIA directly from the mouth of the government. So to the extent that we understand Plaintiff and Amici to be arguing that there's no plausible deniability here, the fact remains that if the reporter were then to turn around and publish their copy of the e-mail, the CIA would not be bound to acknowledge that in any official setting. It would not be bound to disclose it under FOIA. No one who is not party to the actual communication knows for certain what was said. And, Your Honor, it is, again, clear in the case law that the fact that information comes from the CIA or does not come from the CIA can itself be a class of information that is withheld pursuant to FOIA's exemptions B-1 and B-3. So, Your Honor, again, Your Honors are very familiar with the wreckedness case, so I won't belabor the points, but I simply want to point out again that while there are many, as the district court identified, there are many ways in which a class of information could be shared with people outside the agency. And as the district court eventually recognized that the Supreme Court has endorsed the power of the CIA to make such disclosures, at the end of the day, it is for the CIA to disclose, excuse me, to determine how it goes about that and to appreciate the risks and rewards of such disclosures. But in this case, while perhaps in a different context, the CIA may have acted differently, in this case, we acknowledge they used email. But that in and of itself, just the mere fact that the email originated with the government does not make it public and does not affect a waiver of the exemptions of B-1 and B-3. And as we've set forth in a brief, as — Let me maybe repeat my question, and it follows up on the conversation that we had about the strings attached issue. If the CIA were to email a reporter and say nothing other than, here's either confirming some bit of information or otherwise providing information, and that reporter, unlike this case, then re-disseminated the information, put the email online, you're telling us that, I'm not sure under what doctrine exactly, but you're telling us that that would also not make it a public record subject to disclosure. I just want to make sure I understand your question correctly. Are you suggesting that an email containing classified information with the express purpose of dissemination with attribution to the CIA, or something else? Or the CIA sends an email with information and says nothing. It says nothing about one way or the other about whether that information can be further disseminated, but the reporter decides to post it online. What is — how do we deal with that situation? Your Honor, as an initial matter, I don't think that facts — I understand that. This is hypothetical. Your Honor, I think we have to take the position that it depends on the precise context of that communication, and the Supreme Court has held that the CIA's decision to release information in one context does not necessarily — it does not require it to release information in a different context. And so it could very well be the case that in the hypothetical Your Honor posited, that without further indications on the face of that email, there may be other indicia that that information was either not meant to be publicly disseminated or treated in some particular fashion. But again, in this case, the record demonstrates that information was shared for the express purpose of protecting intelligence sources' methods. Is there anything further? Unless the Court has any questions. Thank you very much. We'll hear a rebuttal from Mr. Novak and then the amicus. Your Honor, you've seen it yourself now. There's no limiting principle to this analysis. If an email with the subject line, request for comment, signed by, replied to by the CIA's official press office spokesperson, whose name is in the record here, if that isn't enough, if the New York Times or the Washington Post putting that into the public record isn't enough, then we just don't have a public acknowledgment doctrine. And there's nothing to argue about today. We keep hearing this term private communications. That's a term that has no definition, at least not offered by the CIA. This is the press office email inbox. This is an official email inbox that every journalist knows how to access. There's certainly no expectation of privacy on the journalist's end. We can see what they're talking about. I know what the journalists are asking about. They're asking about CIA overflights in Syria and a doctor in Pakistan who may or may not have been providing information to the government about possible relatives of Osama bin Laden via vaccination results. So we know on the journalist's end for sure. So to call this private communications I think misses the mark. Now, this court in New York Times versus DOJ in 2014 cautioned against a rigid application of Wilson. In light of its, quote, questionable provenance, it ruled that there should be more flexibility given to FOIA requesters, not less. Cotone was not a national security case. It involved mafia wiretaps that were played in open court but not transcribed. Similarly, the D.C. court said we shouldn't have an empty formalism here. Just because it's outside the reach of this particular requester doesn't mean it didn't become public. It didn't enter the public domain. So if we're going to have a rejected rigid application of the Wilson test, it has to go in favor of the requester, right? Because what I'm hearing here is that, no, we need more flexibility as a CIA, not less. That cuts completely against the grain of the cases that this court has already seen fit to decide upon. Well, I think Mr. Sun is saying that these documents are not and the information is not readily available or easily available in the way that we seem to assert that Wilson was the requirement. And whether we're right or wrong on that, that's the precedent that we've got. Well, Your Honor, and I think the answer to that is they are readily available. Because any person in The Times that chooses to have access to them has them. In Wilson, the only people that could possibly access it, Wilson herself, had strings attached. She was contractually obligated to maintain the confidence of that information. What the CIA is relying upon is sort of like they're adding another layer here. They're saying, well, sure, it goes to a member of the public, so it's accessible to the public, but it's not accessible to the public writ large, and that's what we're pushing back against here, Your Honor. Thank you. Your Honors, I'll make four short notes unless you have questions. Number one, the entire point of his hypothetical, his response to you, as Mr. Novak said, goes far beyond any exception that's ever been done. And the case that he cited for it, CIA v. Sims, where he said that disclosure in one context does not mean disclosure in the other, wasn't about the same records. It was not a prior disclosure. It was a case where the CIA had revealed some names on one day, and the requester said that they should be required to release other names on another day. It wasn't the same matching information. The second thing is that even Argus later, which was decided this morning by the Supreme Court about Exemption 4, did not totally abdicate agency responsibility the way that they are suggesting that you should. The government still has to make a call, whereas in the CIA's argument, if the government, can I finish my thought? Of course. Okay. Turn around. Whereas here, the government is completely abdicating to the private entity, if they disclose it, then we have to release it, and if they do not, then we don't. And that just does not play. That's something that it's not up to whether or not Scott Shane releases the record to show that it was officially disclosed. Thank you very much. We'll reserve decision in this matter. And that completes the oral argument portion of the calendar. And as I said earlier, Jarevo v. Lopez-Reyes is on submission. We'll reserve decision as to that. Court is adjourned.